1    **WO**
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                      **FOR THE DISTRICT OF ARIZONA**
8
9
10   United States of America,                    No. CR-11-8139-01-PCT-DGC
11                       Plaintiff,                **ORDER**
12   vs.
13   Dexter Allan Beauty,
14                       Defendant.
15
16
17          On April 22, 2020, the Court granted Probation Officer Leslie Cooper's petition to
18   revoke Defendant Dexter Beauty's supervised release, and ordered that an arrest warrant
19   be issued.  Docs. 68-69.  Following Defendant's arrest, Magistrate Judge Bibles ordered
20   that he be detained.  Docs. 72-73.  Defendant exercised his right to a hearing on the petition,
21   and the hearing was held on June 10, 2020.  *See* Docs. 75, 85.  Four witnesses testified and
22   several exhibits were admitted.  *See* Docs. 86-89.  This order sets forth the Court's findings
23   from evidence presented at the hearing.  The Court will also grant Defendant's motion and
24   review Judge Bibles' detention order.
25   **I.     Supervised Release Violations.**
26          In 2013, Defendant pled guilty to abusive sexual contact with a 14-year old girl in
27   violation of 18 U.S.C. §§ 1153 and 2244(a)(3).  Docs. 28, 37.  He was sentenced to 24
28   months in prison and 60 months of supervised release.  Doc. 42.

The Court revoked Defendant's supervised release in May 2016 because he had unapproved contact with a minor and was unsuccessfully discharged from sex offender treatment.  He returned to the Bureau of Prisons for three months, followed by 60 month of supervised release.  Doc. 61.

The current petition alleges five more violations of his supervised release.  Doc. 68. The government must prove each violation by a preponderance of the evidence.  18 U.S.C. § 3583(e)(3).  The Court will address each of the alleged violations, evidence presented at the hearing, and other arguments made by the parties.

### A.   Lying to the Probation Officer.

Standard Condition #4 of Defendant's supervised release states: "You must answer truthfully the questions asked by your probation officer."  Doc. 68 at 1.  For reasons that will be discussed below, Officer Cooper directed Defendant not to stay at his wife's house. On April 15, 2020, Defendant admitted to Officer Cooper that he had lied to her on April 6, 2020, when he stated that he had been abiding by this direction, when in fact he had not. Officer Cooper testified about this false statement at the evidentiary hearing, and her testimony on this point was not disputed.

Defense counsel instead argued that Officer Cooper's limitation on Defendant's ability to stay with his wife violated his constitutional rights.  But the alleged violation of Standard Condition #4 concerns Defendant's obligation to answer the probation officer's questions truthfully, not where he can reside.  This condition is essential to effective supervision and does not violate Defendant's constitutional rights.  The Court found Officer Cooper's testimony credible and finds by a preponderance of the evidence that Defendant violated Standard Condition #4.

### B.   Residing at Unauthorized Residence.

Special Condition #3 states:  "You shall reside in a residence approved, in advance, by the probation officer.  Any changes in the residence must be pre-approved in writing by the probation officer."  Doc. 68 at 2.

- 2 -

Defendant owns a trailer in Middle Verde, Arizona, and his wife owns a house about two blocks away. At times during his supervised release, Defendant has been allowed to stay at his wife's house with his two teenage stepchildren (a boy and a girl) and his biological son. At times Defendant has also made progress on his supervision, including completing a sex offender treatment program in 2018 and retaining regular, fulltime employment for that last two years.

Officer Cooper testified, however, that she directed Defendant to return to sex offender treatment in 2019 because he began engaging in high-risk behavior, including texting photos of his genitalia to various women who in turn texted similar photos of themselves to him, masturbating to the thought of a young woman he saw in a store and whom he thought was a minor, lying to Ms. Cooper, and engaging in unapproved contact with minors. Defendant re-enrolled in sex offender treatment at West Winds Counseling in August 2019, but he was unsuccessfully discharged in April 2020. Ex. 7.[1]

According to testimony from Sondra Wilkening, his counselor at West Winds, Defendant was discharged because he violated the policies of the treatment program by receiving nude images on Facebook four or five times, staying overnight at his wife's house after being directed not to do so by his probation officer, staying there when a ten-year-old boy was also staying overnight at the house, holding a baby without authorization, having sexual contact with a woman other than his wife four times in January 2020, possessing and shooting a compound bow despite his treatment agreement not to have access to or use weapons, failing to complete therapy assignments, and failing two polygraph exams. *Id.*

On March 16, 2020, while still in treatment, Defendant informed Officer Cooper that his wife had been arrested on a warrant for her third felony DUI. Officer Cooper directed him not to return to his wife's house and told him the house was not an approved residence. Officer Cooper testified that she no longer viewed Defendant's wife as an

---

[1] Citations to "Ex." are to exhibits admitted during the evidentiary hearing. The Federal Rules of Evidence do not apply to supervised release revocation hearings (*see* Fed. R. Evid. 1101(d)(3)), but the parties nonetheless moved for admission – and the Court admitted – several exhibits during the hearing.

appropriate chaperone because of her DUI arrest, the fact that she would not return Officer Cooper's calls, and the fact that Defendant was having an extramarital affair of which his wife was unaware, suggesting that honest communications were not occurring between Defendant and his wife as required for effective chaperoning.

Despite Officer Cooper's clear directive that Defendant not stay at his wife's house, Defendant admitted to her on April 15, 2020, that he had stayed at the house about two nights per week between March 16 and April 15, 2020.  Defendant presented no evidence to dispute this fact during the hearing.  Indeed, his wife testified that it was true.

Defendant argues that the word "residence" in Special Condition #3 is ambiguous. He asserts that the dictionary definition of "residence" would mean his trailer, and that he therefore did not stay at another "residence" when he spent two nights per week at his wife's house.  But Defendant presented no evidence that he or his wife misunderstood the meaning of "residence" in Special Condition #3 or the fact that he was not to stay at her house after Officer Cooper's direction on March 16, 2020.  To the contrary, his wife testified that they both knew he was not supposed to stay there.

Additionally, Defendant's original probation officer, Brett Wrons, clarified in writing at the beginning of Defendant's supervised release that "residence" means "where you will be sleeping *every night* unless given permission by a probation officer to sleep elsewhere."  Ex. 9 at 2 (emphasis added).  Defendant initialed this clarification when Officer Wrons reviewed it with him, and was given a copy.  *Id.*  Thus, there can be no doubt that Defendant knew Special Condition #3 included places where he slept.  "A probation officer's instructions are relevant to whether a supervised release condition gives fair warning of prohibited conduct."  *United States v. King*, 608 F.3d 1122, 1128-29 (9th Cir. 2010); *see United States v. Romero*, 676 F.2d 406, 407 (9th Cir.1982) ("In addition to the bare words of the probation condition, the probationer may be guided by the further definition, explanations, or instructions of the district court and the probation officer."); *United States v. Ly*, 650 F. App'x 503, 507 (9th Cir. 2016) ("the probation officer can supplement the supervision condition with more detailed instructions").

Defendant seems to suggest that the probation office lacked authority to clarify the meaning of "residence." This is incorrect. Congress has specifically directed that "[a] probation officer shall . . . instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions[.]"   18 U.S.C. § 3603(1).   That is precisely what Officer Wrons did when he reviewed Special Condition #3 with Defendant and gave him a written copy of the clarification. *See* Ex. 9.

Finally, as noted above, Defendant argued at the hearing that the limitation on his ability to stay with his wife violated his constitutional rights. The Court does not agree. Limitations on where a convicted sex offender may live clearly fall within the legitimate statutory goals of criminal sentencing. *See* 18 U.S.C. § 3553(a)(1)(C), (D); *United States v. Goddard*, 537 F.3d 1087, 1092 (9th Cir. 2008) ("prior approval of where he lives is reasonably related to deterrence, rehabilitation and protecting the public because it assists the probation officer in monitoring his proximity to minors, and in turn, keeping him away from them").

The Court finds by a preponderance of the evidence that Defendant knew, after March 16, 2020, that he was not allowed to stay at his wife's residence, and that he violated Special Condition #3 by staying there two nights per week for the following four weeks.

### C.     Unapproved Contact with Minors.

Special Condition #7 states: "You shall not be in the company of or have contact with children under the age of 18, with the exception of your own children, without prior approval of the probation officer. Contact includes, but is not limited to, letters, communications devices, audio or visual devices, visits, or communication through a third party. You shall immediately report any contact to the probation officer." Doc. 68 at 2.

Officer Cooper testified that Defendant admitted to her on April 15, 2020, that he was in the company of children known to be less than 18 years old on at least six occasions between September 2019 and April 2020. Defendant seems now to contend that his wife was present as an approved chaperone on each occasion. But Special Condition #7 does

not permit Defendant's contact with children in the presence of a chaperone; it limits child contact to his own children.  The Court finds by a preponderance of the evidence that Defendant violated this special condition.[2]

### D.    Victim Contact.

Special Condition #8 provides:  "You shall not directly or indirectly contact any victim(s) and victim(s) family of the instant offense(s) without prior written permission. . . .  Indirect contact includes, but is not limited to letters, communication devices, audio or visual devices, communication through a third party and/or your presence at any location the victim(s) may be known to frequent.  You shall immediately report any contact to the probation officer."  Doc. 68 at 2.

The government has not shown that Defendant violated this condition.   The evidence suggests that Defendant saw the victim of his original offense, who is now in her twenties and apparently lives in the same area as Defendant, on about six occasions.  These included several times when she was fishing near his trailer and one time when she was driving by with Defendant's cousin.  The evidence suggests that Defendant did not approach or attempt to communicate with her in any of these instances.

Special Condition #8 focuses on Defendant's actions – "You shall not directly or indirectly contact . . . ."   The government presented no evidence that Defendant was responsible for the sightings of the victim or made any effort for them to occur.  In each instance the victim came to an area near Defendant's trailer and he took no steps to interact with her.

It was suggested at the hearing that Defendant was in a location where the victim is known to frequent within the meaning of Special Condition #8, but the condition still requires action by Defendant, and there is no evidence that he took steps to be in a location the victim was known to frequent.  The "location" from which he saw her was his own

---

[2] Special Condition #7 has been modified during the course of this case, but Defendant does not dispute that the above-quoted version was in effect in 2019 and 2020. *See* Doc. 67 (Court order adopting condition on June 19, 2018).

home, where he is authorized to be.  The fact that the victim chose to fish near his trailer cannot reasonably be considered contact by Defendant.  The government has not met its burden of proof on Allegation D of the petition.

### E.   Discharge from Sex Offender Treatment.

Special Condition #11 states:  "You shall attend and participate in a sex offender treatment program and sex offense specific evaluations as approved by the probation officer.  You shall abide by the policies and procedures of all the treatment and evaluation providers."  Doc. 68 at 2.

As noted above, Defendant was unsuccessfully discharged from the treatment program at West Winds in April of this year.  The discharge summary shows that he failed to abide by several policies and procedures of the treatment program as required by Special Condition #11.  Ex. 7.

Defendant does not dispute that he was unsuccessfully discharged, but argues instead that Officer Cooper had no authority to require him to participate in treatment after he had successfully completed treatment in 2018.  The Court does not agree.  Special Condition #11 requires Defendant to participate in treatment "as approved by the probation officer," and the Ninth Circuit has made clear that probation officers may determine the type *and extent* of such treatment.  *See United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003) ("Rearden agreed to a counseling condition, but maintains that a condition which defers to the probation office the ability to choose the type *and extent* of such treatment is too vague to stand.  However, that's what probation officers do; they are mandated to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation.") (emphasis added); *see also United States v. Stephens*, 424 F.3d 876, 880 (9th Cir. 2005) ("Congress has given probation officers broad statutory authority to supervise offenders and to enforce a sentencing court's terms and conditions of supervised release and probation.").

And there is no doubt that Officer Cooper was justified in directing Defendant to re-enroll in sex offender treatment.  While still under supervised release for a sex offense,

Defendant began exchanging nude photos of genitalia with various women, masturbating to the thought of a young woman he saw in a store, lying to his probation officer, and engaging in unapproved minor contact.  These actions presented obvious risks.  Officer Cooper's requirement that Defendant resume sex offender treatment was prudent and entirely consistent with the conditions of his release and at least two purposes of federal sentencing: to protect the public from further crimes by Defendant and to provide him with needed educational, medical, and correctional treatment.  18 U.S.C. § 3553(a)(2)(C), (D).

The Court finds by a preponderance of the evidence that Defendant has violated Special Condition #11.

## II.     Review of Detention Order.

To obtain release, Defendant must show by clear and convincing evidence that he is not a flight risk or danger to the community. Fed. R. Crim. P. 32.1(a)(6).  After reviewing the facts of this case de novo, including the parties' briefing on this issue (Docs. 75, 76, 80), the Court finds that Defendant has not shown by clear and convincing evidence that he is not a danger to the community.  Defendant's conviction for sexual abuse of a minor, his conduct as outlined above, and his discharge from treatment suggest that he presents a danger to the community.  His longstanding residence in Middle Verde and his steady employment show that he is not a flight risk, but he will remain detained until the disposition hearing because he has not shown that he is not a danger to the community.

**IT IS ORDERED:**

1.     Defendant has violated his supervised release.  The Court will set a disposition hearing by separate order.

2.     Defendant's Motion to Review Detention Order (Doc. 75) is **granted**.  The detention order is reviewed de novo and affirmed.

3.     Defendant's Motion for Judicial Notice (Doc. 84) is **granted**.

Dated this 15th day of June, 2020.

David G. Campbell
United States District Judge